IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JOHNNY R. BRAMTON,

     Plaintiff,

vs.                            Case No. 5:12cv127-CAS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____/


## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned upon consent of the

parties, doc. 7, and reference by District Chief Judge M. Casey Rodgers.   Doc. 9.   The

Court concludes that the decision of the Commissioner should be affirmed.

## I.  Procedural History of the Case

On December 31, 2007, Plaintiff, Johnny R. Bramton, applied for a period of

disability and Disability Insurance Benefits (DIB) pursuant to Title II Social Security Act

(Act) and also applied for Supplemental Security Income (SSI) benefits pursuant to under

Title XVI of the Social Security Act (Act) for a period of disability with an alleged onset

date of December 2, 2006.  R. 14, 139-47.   (Citations to the Record shall be by the

symbol R. followed by a page number that appears in the lower right corner.)

Plaintiff's claims were denied initially on June 10, 2008, and upon reconsideration on October 3, 2008. *Id.* at 14, 71-90. On October 22, 2008, Plaintiff requested a hearing. *Id.* at 14, 91-92. On July 14, 2010, an evidentiary hearing was held in Panama City, Florida, and conducted by Administrative Law Judge Morton J. Gold, Jr. *Id.* at 25, 31, 33. Plaintiff was represented by David E. Evans, an attorney. *Id.* at 7, 14, 31. William M. Jenkins, Ed.D., testified as an impartial vocational expert (VE). *Id.* at 61-69, 113-15 (Resume).

On October 8, 2010, the ALJ entered his Decision concluding that Plaintiff is not disabled. *Id.* at 25. On November 1, 2010, Plaintiff filed a request for review of the ALJ's decision, which included a two-page letter from Plaintiff. *Id.* at 8-10. On March 6, 2012, the Appeals Council denied Plaintiff's request for review, which also included consideration of a two-page letter from Plaintiff's wife. *Id.* at 1-5, 272-73 (Exhibit 20E). The ALJ's decision stands as the final decision of the Commissioner.

On May 23, 2012, Plaintiff filed a complaint requesting judicial review of the Commissioner's final decision. Doc. 1. Both parties filed memoranda of law, docs. 10 and 13, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2011." R. 16.

2. Plaintiff "has not engaged in substantial gainful activity since December 2, 2006, the alleged onset date." *Id.*

3. Plaintiff has several "severe impairments: Poly-arthralgias, vertigo, anxiety and depression." *Id.* The ALJ made extensive findings in reaching this

Case No. 5:12cv127-CAS

determination. *Id.* at 16-21. The ALJ also found that Plaintiff's non-severe impairments such as "[p]ost-traumatic stress disorder, dysthymia and dependent personality disorder cause *no* limitations in the claimant's activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace and *no* episodes of decompensation of extended duration." *Id.* at 20 (emphasis added).

4.  Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 21. Plaintiff's vertigo does not meet or equal Listing B Otolaryngology and Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." In making this finding, the ALJ "has considered whether the 'paragraph B' criteria are satisfied." *Id.* The ALJ found that Plaintiff has *mild* limitations in activities of daily living; *moderate* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace; and *no* episodes of decompensation. *Id.* at 22. The ALJ further found that because Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." *Id.* The ALJ also found that the evidence did not establish the presence of the "paragraph C" criteria. *Id.*

5.  [C]laimant's polyarthralgias and vertigo limit him to performing medium exertional work activities that never require climbing ladders, ropes, or scaffolding. He can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. He can lift/carry 50 pounds occasionally (up to 1/3 of an eight-hour workday) and 25 pounds frequently (up to 2/3 of an eight-hour workday). He should avoid concentrated exposure to extreme hazardous work environments where medication-induced dizziness might result in harm to him or others. [Plaintiff's] depression and anxiety limit exposure to the public 1/3 of an eight[-]hour workday but he can work in close proximity with them. Claimant is better working with objects rather than people.

*Id.* at 22-23.

6.  Plaintiff "is capable of performing past relevant work as a stock clerk. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." *Id.* at 24.

7.  Plaintiff "has not been under a disability, as defined in the Social Security Act, December 2, 2006, through the date of this decision " *Id.* at 25.

Case No. 5:12cv127-CAS

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have any impairments which prevent past relevant work?

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.

If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Legal Analysis

### A.  Whether Substantial Evidence Supports the ALJ's RFC Determination and Whether the ALJ Correctly applied the Law

Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing.   See Doc. 10.

Rather, Plaintiff contends that the ALJ committed reversible error because he "failed to properly assess his 'severe' mental impairments of depression and anxiety as required by SSR 96-8p and SSR-85-15 which resulted in a hypothetical question to the VE that was not accurate."   Id. at 10.   According to Plaintiff, "[t]his resulted in the ALJ['s erroneous] finding that the Plaintiff could return to one of his past jobs as it was performed in the national economy."   Id.   The Commissioner argues that the ALJ properly evaluated Plaintiff's mental impairments of depression and anxiety and other limitations.   Doc. 13 at 4-6.

Case No. 5:12cv127-CAS

## 1. The Evidence and the ALJ's Findings and Conclusions

Medical and other evidence considered by the ALJ is set forth in the ALJ's Decision at pages 16 through 25 and is incorporated herein. R. 16-25. Plaintiff's hearing testimony is summarized by the ALJ in his Decision and is also incorporated herein. *See, e.g., id.* at 23-24.

After determining that Plaintiff has not engaged in substantial gainful activity since December 1, 2007, the ALJ found that Plaintiff has several severe impairments such as Poly-arthralgias, vertigo, anxiety and depression. The ALJ discussed the severity of these impairments in light of several consultative examinations and medical evidence. *Id.* at 16-21.

On July 28, 2007, Seymour Goss, M.D., conducted a consultative examination of ⸳Plaintiff. *Id.* at 16-17, 283-89. Dr. Goss's impressions were that Plaintiff had a history of bicuspid aortic valve from birth; depression; anxiety; dizziness; hamstrings; acid reflux; back and joint pain per history; and mild obesity. *Id.* at 17, 285. The examinations were generally normal, *id.* at 16-17, and Dr. Goss's assessment of Plaintiff's mental status was: "Patient is in a normal mental status without any anxiety or depression. Patient behaved very nicely with the clinic staff." *Id.* at 17. Plaintiff denied any emotional instability. He admitted to dizziness. *Id.* at 283-85.[2]

---

[2]  On August 21 2007, George L. Horvat, Ph.D., conducted his first of two consultative examinations of Plaintiff. *Id.* at 290-93 (Exhibit 4F). Dr. Horvat's prognosis was that if Plaintiff could be cleared physically to return to work, there are no psychological reasons why he cannot do so. *Id.* at 298. Dr. Horvat's diagnoses were: attention deficit/hyperactivity disorder and inattentive type (Axis I); major depressive disorder, recurrent. Dr. Horvat did not provide a diagnosis for Axis II and no GAF score. *Id.* at 292-93. (Axis II relates to personality disorders and mental retardation. *See infra*

On May 17, 2008, Stanford A. Williamson, D.O, conducted a social security consultative exam. *Id.* at 17-18, 307-12. Dr. Williamson's diagnoses were chronic cervicalgia with symptoms of radiculitis; chronic low back pain with symptoms of radiculitis; and reported dizziness attributed to current medications. *Id.* at 18, 309. The various examinations were generally normal, although Plaintiff's range of motion "at the cervical spine is with deficits," with extension and rotation at less than 50 percent. *Id.* at 18, 309-10. Plaintiff's range of motion "at the lumbar spine is within normal limits." *Id.* The ALJ also assessed Plaintiff's mental status, noting that Plaintiff had a history of depression. *Id.* at 18-20.

The ALJ begins his discussion of Plaintiff's mental status: "In February 2007, he presented to the Life Management Center [the Center], on referral by his treating physician due to major depression. His diagnosis was major depression without psychotic features, social phobias and a Global Assessment of Functioning of 10 (Exhibits 1F and 2F)." *Id.* at 18. In endnote one, the ALJ refers to the "Diagnostic and Statistical Manual of Mental Disorders (Fourth ed. 1994) at page 32," which states that a GAF of 10 "is indicative of persistence [sic] danger of severely hurting self or others OR persistent inability to maintain minimum person hygiene OR serious suicidal act with clear expectation of death." R. at 18 note1; *see id.* at 276-82. There are no other patient notes from the Center, except that on August 23, 1994, Plaintiff was referred to the Center "by a friend." *Id.* at 274. An outpatient therapist recommended that Plaintiff receive individual therapy. *Id.* at 275. The ALJ refers to this examination,

---

notes 3 and 5, DSM-IV-TR at 28.)

Exhibit 1F. *Id.* at 18.

On May 12, 2008, George L. Horvat, Ph.D, conducted a second psychological consultative examination. *Id.* at 18-19, 303-06. The results of the examination are reported by the ALJ. *Id.*[3] Dr. Horvat's diagnoses included social anxiety; post-traumatic stress disorder; Dysthymic disorder; attention deficit/hyperactivity disorder (inattentive type by history); and dependent personality disorder. *Id.* at 19, 305.[4] Plaintiff's "current" Global Assessment of Functioning (GAF) Axis V Scale rating was 65.[5] Dr. Horvat opined that Plaintiff was "capable of handling finances. If he can be cleared physically to work, there are no psychological reasons why he cannot do so.

---

[3] The ALJ refers to Exhibit 4F, which is Dr. Horvat's August 21, 2007, examination and not his May 12, 2008, examination (Exhibit 7F), *see id.* at 19, 22. *See supra* note 2. It is clear that the ALJ is discussing Exhibit 7F, although there is some overlap between the two examination reports.

[4] "Dysthymic" means "characterized by symptoms of mild depression, as in dysthymic disorder." Dorland's Illustrated Med. Dictionary 582 (32d. 2012).

[5] The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners. The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id. See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale). A GAF scale rating of 61 to 70 indicates some *mild* symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV-TR at 34. The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

His psychological treatment program can be scheduled around his work commitments."
*Id.* at 19, 305-06.[6]

On December 15, 2009, Plaintiff presented to Shakir R. Meghani, M.D., on
referral for depression and anxiety and an initial psychiatric evaluation. *Id.* at 19, 367,
457. The mental status exam indicated a normal appearance; fully-oriented
orientation; agitated motor activity; appropriate affect; depressed and volatile mood; no
psychosis; distracted and fair attention span; delayed speech; good insight and
judgment; a decrease in sleep; good appetite; and no suicidal or homicidal estimate.
*Id.* at 19, 370. Dr. Meghani's diagnosis is not legible, except for what appears to be a
"60" beside Axis V, which is a GAF score. *Id.* at 19, 371, 461; *see supra* note 5.[7]

On March 17, 2010, Plaintiff was admitted to Southeast Alabama Medical Center
on a referral from Southeast Psychiatric Services (Dr. Meghani, *id.* at 367, 409) with a
chief complaint of suicidal ideation, addiction to the internet, chat, face book, and talking
with his ex-girlfriend and his wife being very furious about that. *Id.* at 19, 43, 409.
(Plaintiff was discharged on March 19, 2010. *Id.* at 408.) The ALJ summarizes the
hospital patient notes in detail and noted, in part, that Plaintiff's attention and

---

[6] On June 4, 2008, James L. Meyers, Psy.D., performed a Psychiatric Review
Technique (PRT) and determined that Plaintiff had *mild* restriction or difficulties in the
three functional limitation areas and *no* episodes of decompensation, each of extended
duration. *Id.* at 314, 318. On September 22, 2008, Lauriann Sandrik, Psy.D., reached
the same conclusions in a PRT. *Id.* at 345, 355.

[7] A GAF scale rating of 51 to 60 indicates *moderate* symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) or *moderate* difficulty in social,
occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
DSM-IV-TR at 34.

concentration was impaired; he was easily distracted; his speech was normal; his

insight and judgment was poor; his cognitive functioning seemed okay; and his

immediate recall, short-term and long term were fine, although his attention and

concentration were not good. *Id.* at 20, 409. Dr. Meghani also noted that a group

session was held with Plaintiff, his wife, and a counselor. The ALJ emphasized, in

part, the following from the discharge summary:

> The claimant indicated that he used the threat of suicide to get leverage and for manipulation purposes. He did not exhibit any behavioral problems while he was on the unit. He participated well in group activities. His sleep was good, and his appetite was good. His behavior was normal. He was fully alert and oriented. His attention span was good and his thought process was goal directed. He denied hallucinations and he denied suicidal or homicidal ideations. His mood was dysphoric. His affect was appropriate. His memory, both recent and remote were [sic] good. His impulse control was fair. His judgment and insight were below average. Psychomotor activity was normal. He had good progress toward treatment goals. He was not an active threat to himself or others, and at the time (March 19, 2010) he was discharged home with instructions to take medications prescribed, and keep all follow-up appointments (Exhibit18F).

*Id.* at 20 (emphasis added by ALJ), 409-10; *see id.* at 411-19 (additional patient notes,

including a March 19, 2010, discharge note by Dr. Meghani assessing Plaintiff with a

GAF 25 score. *Id.* at 408, 413). "It was determined that [Plaintiff] could be followed

up on an outpatient basis." *Id.* at 410.

The ALJ considered treatment notes from Holmes County Health Department for

the period February 25, 2009, to April 14, 2010, disclosing that Plaintiff "has a past

medical history of anxiety, depression, dyslipidemia, and gastroesophageal reflux

disease (Exhibit 17F/7). *Id.* at 20, 373-404. Specific reference is also made to

September 28, 2009, treatment notes stating, in part, that "Effexor was working well for

him." *Id.* at 20, 389 (emphasis added by ALJ). There is a patient note apparently dated April 14, 2010, which notes that Plaintiff reported being admitted (for depression) to a facility for two days, but that he reported feeling "ok today, no depression," although he still had some sleep problems. *Id.* at 384; *see id.* at 383 (May 10, 2010, patient note indicating, in part, normal gait and balance, although depression and BHP are noted).

The ALJ also discusses Plaintiff's "nonsevere impairments," including post-traumatic stress disorder, dysthymia, and dependent personality disorder, which, according to the ALJ, "cause *no* limitations in the claimant's activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace and *no* episodes of decompensation of extended duration." *Id.* at 20 (emphasis added); *see id.* at 21. The ALJ also found that Plaintiff's "mild obesity, high cholesterol, and high triglyceride counts do not cause any functional limitations and therefore they are non-severe." *Id.* Under the same heading, the ALJ further evaluates Plaintiff's mental impairments under Listings 12.04, referred to as Dysthymic Disorder; 12.06, referred to as Posttraumatic Stress Disorder; and 12.08, referred to as Dependent Personality Disorder.[8] The ALJ finds that the paragraph A criteria "of these listings may be satisfied," but not the paragraph B and C criteria. The ALJ reiterated his prior finding regarding Plaintiff's limitations and difficulties. *Id.* at 21.

The ALJ ends his discussion of Plaintiff's impairments and concludes: "The

---

[8] These listings appear in 20 C.F.R. Part 404, Subpart P, Appendix 1 and are referred to as follows: 12.04 (affective disorder); 12.06 (anxiety related disorders); and 12.08 (personality disorders).

combined effect and combination of these impairments do not significantly limit his ability to perform basic work-related activities." *Id.*

Next, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. *Id.* at 21-22. Plaintiff does not challenge this determination. Nevertheless, first, the ALJ found that Plaintiff's poly-arthralgias do not meet or equal Listings 1.02 (major dysfunction of a joint(s) (due to any cause)) and 14.09 (inflammatory arthritis); Plaintiff's vertigo (B Otolaryngology) does not meet or equal Listing 2.00 (special senses and speech). Plaintiff "associated his vertigo with medication side effects." *Id.* at 21.[9]

The ALJ also found that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria in Listings 12.04 and 12.06. The ALJ compared Plaintiff's and his wife's description of Plaintiff's daily activities with the examination conducted by Dr. Horvat and concluded that Plaintiff's "reported limited daily activities are considered to be outweighed by the other factors discussed in this decision and therefore he has mild limitations in his activities of daily living." *Id.* at 22. Similarly, the ALJ compared the evidence and concluded that Plaintiff has moderate difficulties in social functioning and mild difficulties regarding concentration, persistence or pace. *Id.* The ALJ also found that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration," notwithstanding consideration of Plaintiff's March 17, 2010, admission and discharge from Southeast

---

[9] Otolaryngology means "the branch of medicine concerned with medical and surgical treatment of the head and neck, including the ears, nose, and throat." Dorland's Illustrated Med. Dictionary 1351 (32d. 2012).

Alabama Medical Center.  *Id.* at 19, 22.

The ALJ found that the paragraphs "B" and "C" criteria were not met.  *Id.* at 22.

Nevertheless, the ALJ stated that the paragraph "B" criteria are not a RFC

> assessment but are used to rate the severity of mental impairments at steps 2
> and 3 of the sequential evaluation process.  The mental [RFC] assessment
> used at steps 4 and 5 of the sequential evaluation process requires a more
> detailed assessment by itemizing various functions contained in the broad
> categories found in paragraph B of the adult mental disorders in 12.00 of the
> Listing of Impairments (SSR 96-8p).  Therefore, the following [RFC]
> assessment reflects the degree of limitation the [ALJ] has found in the
> "paragraph B" mental function analysis.

*Id.*

In light of this framework and before considering step four of the sequential

evaluation process, the ALJ made findings regarding Plaintiff's RFC following a

two-step process: (1) whether there is an underlying medically determinable physical or

mental impairment that could reasonably be expected to produce the Plaintiff's pain or

other symptoms; and (2) if so, whether the intensity, persistence, and limiting effects of

Plaintiff's symptoms limit Plaintiff's functioning.  At this point, the ALJ discussed the

relevant medical and other evidence presented.  *Id.* at 23-24.[10]

---

[10]  On June 10, 2008, Du Nguyen conducted a physical RFC assessment.  *Id.* 24,
at 328-35 (Exhibit 11F); *see* R. 24 (ALJ references to this exhibit).  Du Nguyen
concluded that Plaintiff could occasionally lift/and or carry 50 pounds; frequently lift/or or
carry 25 pounds; stand and/or walk (with normal breaks) about 6 hours in an 8-hour
workday; sit (with normal breaks) about 6 hours in an 8-hour workday; and could push
and/or pull at an unlimited rating.  *Id.* at 329.  There were no limitations noted, except
that Plaintiff avoid concentrated exposure to hazards (machinery, heights, etc.).  *Id.* at
332.  On October 2, 2008, Donald Morford, M.D., reached the same conclusions
regarding Plaintiff's functional limitations.  *Id.* at 16, 24, 360 (Exhibit 15F); *see* R. 24 (ALJ
references to this exhibit).  Dr. Morford noted, however, that Plaintiff had postural
limitations (occasionally re climbing and frequently re balancing, stooping, kneeling,
crouching, and crawling).  *Id.* at 361.  Dr. Morford noted that a treating physician or

The ALJ provided a detailed summary of Plaintiff's hearing testimony, including that he has a 12th grade education and one year of college, can read, write, and do math. *Id.* at 23-24. Additional testimony is provided:

> He brought a cane with him to the hearing. He testified that he ha[s] been depressed his entire life and he stopped working due to joint pains and social avoidance due to worsening of anxiety. Socially his wife is his only friend. He mostly avoids others, however he got into trouble e-mailing his ex-girlfriend. He e[-]mails his nephews and other people on the internet. He suffers with depression at least one day a week and this debilitates him for [an] entire day. He cannot focus or do anything. The claimant testified that he was suicidal one year ago [.] However, the medical evidence discloses that the claimant used the threat of suicide to get leverage and for manipulation purposes (Exhibit 18F). The claimant alleges medication side effects of dizziness and he has this symptom often throughout the day. He indicated that he uses a cane for balance. He alleges aches and pain in the neck and lower back. He alleges a pinch nerve that affects his left upper extremity all the way down into his thumb. He testified that if he lifted 10 pounds repetitively it would cause the nerve in his neck to act up and he would have pain in [his] neck, shoulder muscle and center of back. The pain would radiate down into the right leg and he would have numbness in the right side of the right leg. Once this is aggravated it would take two to three days to recover.
>
> He spends time surfing the internet and he can stay focused for 20 to 30 minutes. He and his wife do not do any housekeeping of [sic] cooking. They do the bare minimum to get by. The claimant can drive as much as he wants to. He drives 6 miles every other day to the convenience store. He lives in the country but has no problem driving in the traffic. The claimant's grandchildren ages 11 and 5 years old will visit him a couple of hours per week. He will go to beauty pageants to watch his grandchildren but will take an extra nerve pill.
>
> He has a big problem dealing with other people. He does not get violent. He had an eBay business and that failed because he had problems keeping up with it. After working eBay for one hour he would have to rest for a couple of hours. The claimant did not think that he would be able to stand and work 8 hours a day in a back room away from other people.

---

examining source statements(s) regarding Plaintiff's physical capacities were in the file. *Id.* at 365. The ALJ gave "great weight" to these RFC assessments. *Id.* at 24. The ALJ also determined that Plaintiff's mental impairments are supported by Dr. Horvat's examination "because it is consistent with the record." *Id.*

*Id.* at 23-24 (emphasis added by ALJ); *see id.* at 38-61 (Plaintiff's hearing testimony) and 9-10 (Plaintiff's two-page post-hearing statement).

Dr. Jenkins, the vocational expert and certified rehabilitation counselor, testified during the hearing. *Id.* at 61-69. He was familiar with the southeast region, primarily the state of Georgia. He is working as an independent contractor. Plaintiff's counsel was satisfied with Dr. Jenkins credentials. The ALJ found that Dr. Jenkins was qualified as a vocational expert. *Id.* at 61-63.

Dr. Jenkins determined that Plaintiff performed several jobs within the past 15 years: *stock control clerk*, with a SVP of 5, semi-skilled and *light exertional work*, but heavy as performed by Plaintiff; and *light truck driver*, classified as semi-skilled, *medium exertional level work*, with a SVP of 3. The ALJ determined that Dr. Jenkins testimony was consistent with the Dictionary of Occupational Titles (DOT). *Id.* at 24-25, 63-65; *see id.* at 149-51, 227 (Plaintiff's work record at the auto parts store).

The ALJ posed hypothetical questions to Dr. Jenkins and the first hypothetical follows:

> In both hypotheticals we have an individual who as of his alleged onset date was closely approaching advanced age, that is, he was between the ages of 50 and 54, inclusive. In this case, 52 years of age.
>
> He is currently of advanced age having reached the age of 55. We do have an individual who is a high school graduate with a year's worth of college credits in the fairly remote past. In our first hypothetical our individual's polyarthralgias and vertigo limit him into performing medium exertional work activities that never require climbing ladders, ropes or scaffolding.
>
> He can individually sit, stand, walk, push and or pull for at least six of eight hours in an eight hour work day. Can lift 50 pounds occasionally, defined as up to one-third of an eight hours [sic] work day, and 25 pounds frequently, defined as up to two-thirds of an eight hour day. He should avoid concentrated exposure to

extreme hazardous work environments where medication induced dizziness might result in harm to him or others.

His depression and anxiety will limit his exposure to the public and that should be for no more than one-third of an eight hour work day but he can work in close proximity so long as he does not have to socialize with them. Our individual is better working with objects rather than people.

Within the parameters of that first hypothetical, sir, would that individual be able to perform either of Mr. Bramton's past work activities either as he described them or as set forth in the [DOT]?

*Id.* at 65-66. Dr. Jenkins initially responded that "he would not. The people issue is the problem here." *Id.* at 66. The ALJ and Dr. Jenkins clarified--"[g]eneral public, yes." *Id.* After some discussion, the ALJ inquired: "Would that individual be able to perform his past work activity as a stock control clerk with the limitations I gave, medium exertional work, avoiding hazardous environments." *Id.* at 67. Dr. Jenkins opined that Plaintiff, as the hypothetical person, could perform his past work as a stock control clerk as described by the DOT, but not as described by Plaintiff. *Id.* at 67-68. Conversely, Dr. Jenkins opined that Plaintiff could not perform his past work as a light truck driver because of the hazardous work environment. *Id.* at 68.

The ALJ asked Dr. Jenkins a second hypothetical. He asked him to assume similar predicate facts, except he asked Dr. Jenkins to further assume "our individual is the same age and education, his poly-arthralgias and vertigo would limit him to lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently"; "would be able to individually sit, stand, and walk for a total of six hours in an eight hour day"; with "[t]he other two hours of the eight hour workday he's going to require breaks of about an hour in the morning and an hour in the afternoon instead of the usual 10 or 15 minutes. About

four times a month our individual is going to miss entire day's worth of work." *Id.* (The reduction in pounds lifted or carried, number and frequency of breaks, and missing work days were included in the second hypothetical question.) Dr. Jenkins opined that the hypothetical individual could not perform Plaintiff's past work activity as a stock control clerk, even considering being "[o]utside of sheltered workshop or accommodating workshop." *Id.* at 68-69. Plaintiff's counsel did not ask questions appearing to rely on the ALJ's second hypothetical and the restrictions. *Id.* at 69.

In his Decision, the ALJ ultimately concluded that Plaintiff has the RFC "with the physical and mental demands of this work," to "perform his prior job as a stock control clerk as it is generally performed in the national economy." *Id.* at 25. Thus, the ALJ also concluded that Plaintiff "did not overcome his burden of proving [he] could not perform his past relevant work at the fourth step of the sequential evaluation process." *Id.*

### 2. Whether the ALJ Committed Reversible Error

Plaintiff contends that the ALJ committed reversible error because he "failed to properly assess his 'severe' mental impairments of depression and anxiety as required by SSR [Social Security Ruling] 96-8p and SSR-85-15 which resulted in a hypothetical question to the VE that was not accurate." Doc. 10 at 10. Specifically, Plaintiff argues that the ALJ failed to properly assess his ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with change in a routine work setting as required by SSR 96-89. *Id.* at 10-13. According to Plaintiff, "[t]his resulted in the ALJ['s erroneous] finding that the Plaintiff could return to one of his past jobs as it

was performed in the national economy." *Id.* at 10. The Commissioner argues that the ALJ properly evaluated Plaintiff's mental impairments of depression and anxiety. Doc. 13 at 4-6.

The ALJ determined that Plaintiff had the RFC to perform a range of medium exertional work with restrictions.[11] R. 22-23. The RFC is what a claimant can still do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). It is an assessment based upon all of the relevant evidence including a claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining a claimant's RFC lies with the ALJ. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).

The ALJ also determined that Plaintiff could perform his prior job as a stock control clerk as it is generally performed in the national economy, i.e., as defined in the DOT as light exertional work, but not as performed by Plaintiff, i.e., heavy. *Id.* at 25, 63-68.

The ALJ discussed Plaintiff's severe impairments, poly-arthralgias, vertigo, anxiety, and depression, and his non-severe impairments, PTSD, dysthymia and dependent personality disorder, in light Plaintiff's hearing testimony; Plaintiff and his wife's descriptions of their daily activities and social functioning; Plaintiff's ability to concentrate, his persistence and pace; the medical evidence and consultative examinations; and State Agency medical consultant reports. The ALJ determined that

---

[11] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. *If someone can do medium work, we determine that he or she can also do sedentary and light work.*" 20 C.F.R. §§ 404.1567(c), 416.967(c) (emphasis added).

Case No. 5:12cv127-CAS

Plaintiff is capable of performing past relevant work as a stock clerk.  *Id*. at 16-25.

The ALJ noted that Plaintiff "has a big problem dealing with other people"; he "cannot work well with others"; "his wife is his only friend"; etc.  *Id*. at 22, 24.   The ALJ recognized that Plaintiff could have exposure to the public no more than one-third of the workday due to depression and anxiety.  *Id*. at 23.   He noted that Plaintiff could work in close proximity to the public, but that he was better working with objects rather than with people.  *Id*.[12]   Dr. Horvat opined in August 2007 and May 2008 that there was no psychological reason Plaintiff could not work.  *Id*. at 290-93, 303-06.   The Psychiatric Review Technique's provided by Dr. Meyers in June 2008 and by Dr. Sandrik in September 2008 are consistent with Dr. Horvat's conclusion.  *Id*. at 318, 355; *see supra* note 6.

In December 2009, Plaintiff was examined by Dr. Meghani on referral for depression and anxiety.  *Id*. at 19, 367, 457.   The mental status exam indicated a normal appearance; fully oriented orientation; agitated motor activity; appropriate affect; depressed and volatile mood; no psychosis; distracted and fair attention span; delayed speech; good insight and judgment; a decrease in sleep; good appetite; and no suicidal or homicidal estimate.  *Id*. at 19, 370.   Dr. Meghani's diagnosis is not legible, except for what appears to be a "60" beside Axis V, which is a GAF score.  *Id*. at 19, 371, 461; *see supra* note 7.   The ALJ discusses Plaintiff's admission to Southeast

---

[12]   These factors were presented to Dr. Jenkins in the first hypothetical question: "His depression and anxiety will limit his exposure to the public and that should be for no more than one-third of an eight hour work day but he can work in close proximity so long as he does not have to socialize with them.   Our individual is better working with objects rather than people."  *Id*. at 66.

Case No. 5:12cv127-CAS

Alabama Medical Center in March 2010.  *Id.* at 19-20.

The ALJ also discusses Plaintiff's severe impairments of poly-arthralgias and vertigo such that they were found to limit Plaintiff to "performing medium exertional work activities that never require climbing, ladders, ropes or scaffolding."  *Id.* at 21-22, 66. Another restriction was considered such as avoiding "concentrated exposure to extreme hazardous work environments where medication induced dizziness might result in harm to [Plaintiff] or other."  *Id.*  (Plaintiff does not challenge the ALJ's determination that Plaintiff's poly-arthralgias and vertigo did not meet or medically equal a Listing.)

Plaintiff relies on SSR 96-8p throughout his memorandum.   Doc. 10 at 10-13. Plaintiff argues that the ALJ's RFC determination does not comply with SSR 96-8p because the ALJ did not discuss, function by function, each of Plaintiff's mental impairments to determine the extent of his mental impairments on his RFC.   Doc. 10 at 10.   Social security rulings do not have the force and effect of statutes or regulations. *See* Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007); Walker v. Sec'y of Health & Human Servs., 943 F.2d 1257, 1259 (10th Cir. 1991).   The Rulings are generally entitled to deference, however.   Fagan v. Astrue, 231 F. App'x 835, 837 (10th Cir. 2007).

From a review of the ALJ's Decision, the ALJ was well aware of all of Plaintiff's alleged impairments and how those impairments were evaluated.   It is a fair inference that the ALJ did not find that Plaintiff had any limitations with regard to using judgment, following instructions, or dealing with changes.  *See generally* Depover v. Barnhart,

349 F.3d 563 (8th Cir. 2003); *see also* <u>Hoffman v. Astrue</u>, Case No. 3:12cv106-CSC (WO), 2012 U.S. Dist. LEXIS 161870, *12-14 (M.D. Ala. Nov. 13, 2012). It is reasonable to conclude that the ALJ found Plaintiff was limited in social functioning, having moderate difficulties, but that he could perform other work-related mental and physical functions.

The ALJ made a thorough analysis of the hearing testimony in light of the objective medical evidence in reaching his decision. The factors presented in the first hypothetical question to Dr. Jenkins and the ensuing discussion between the ALJ and Dr. Jenkins accounted for Plaintiff's proven impairments and proven limitations or restrictions on his ability to work and, as a result, the ALJ's RFC determination is based on substantial evidence.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly followed the law. Accordingly, pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED** and the Clerk is **DIRECTED** to enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 14, 2013.


s/   Charles A. Stampelos
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE


Case No. 5:12cv127-CAS